IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38302-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA JOHN EDWARDS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Joshua Edwards was convicted of possession of a controlled

substance (heroin) with intent to deliver. Proof of his intent to deliver was based in

material part on an incriminating statement he made to a detective with whom he asked to

speak in hopes of obtaining leniency on what had originally been charged as only simple

possession.

On appeal, Mr. Edwards challenges the sufficiency of the evidence, including to

argue that the State failed to present independent evidence sufficient to corroborate his

incriminating statement under the corpus delicti rule. Alternatively, he argues that the

trial court should have granted his motion to suppress the statement because it was

obtained through a custodial interrogation unpreceded by *Miranda*[1] warnings or in

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

violation of his right to counsel. For the first time on appeal, he also argues it was inadmissible under ER 410.

The State failed to produce evidence required by the corpus delicti rule to corroborate Mr. Edwards's incriminating statement. Without the statement, there was insufficient evidence of intent to deliver. Given evidence insufficiency, we need not reach Mr. Edwards's other challenges to the trial court's suppression decision. We reverse and dismiss the charge with prejudice.

FACTS AND PROCEDURAL BACKGROUND

On November 25, 2019, law enforcement received a report that Joshua Edwards, who had an active warrant, was selling heroin from his trailer. Stevens County sheriff's deputies located Mr. Edwards at the trailer and arrested him on the warrant. In a search incident to arrest, they found a "[b]lack tar like substance," a wallet, and credit cards in Mr. Edwards's pockets. Report of Proceedings (RP) at 189.[2] The Department of Corrections was contacted and arrived to search the trailer. No drugs, scales, or cash were found.

Lab analysis later identified the substance found in Mr. Edwards's pockets as heroin weighing approximately 23 grams. He was charged with one count of possession of heroin.

---

[2] References to the report of proceedings are to the volume that begins with the transcript of a pretrial hearing taking place on April 6, 2021, and includes the transcript of the trial.

On December 20, 2019, Detective Mark Coon was advised that Mr. Edwards, who was in custody, had asked to speak with a detective for consideration on his current charge. As the on-duty officer, Detective Coon had Mr. Edwards brought from his jail cell to the sheriff's office interview room to speak as requested. He did not administer *Miranda* warnings to Mr. Edwards. Mr. Edwards's court-appointed lawyer was not present; the detective later testified that he asked Mr. Edwards if he had an attorney and wanted him present, and Mr. Edwards answered that he had an attorney but did not want him present because "he didn't trust him." RP at 47.

According to Detective Coon, Mr. Edwards "freely and voluntarily told me . . . he got arrested with a large amount of heroin," and, in exchange for leniency on his current charge, wanted to provide information on some "human trafficking type" cases involving females who were being given pass out quantities of drugs and assaulted,. RP at 202-03. Asked about the assault cases he was referring to, Mr. Edwards told Detective Coon "he did not have personal knowledge" of the cases, but "he could use his personality and his kindness to get in with [the victims] and get them to cooperate with him." RP at 203. When Detective Coon again asked Mr. Edwards to identify the particular cases he was referring to, Mr. Edwards's response was that he "sells drugs, he's not into rape." RP at 204. Because Mr. Edwards made it clear that he did not want to act as an informant and his suggestion of information he might procure was not useful without details, Detective Coon ended the conversation and escorted Mr. Edwards back to his cell.

Several months later, Detective Coon filed a supplemental report of his December 2019 conversation with Mr. Edwards.  The State successfully moved to amend Mr. Edwards's simple possession charge to include possession with intent to deliver heroin, using Detective Coon's report as a basis for probable cause of intent to deliver.

Shortly before trial, the court conducted a CrR 3.5 hearing on a State motion to admit Mr. Edwards's statement from the jail interview about only "sell[ing] drugs." Clerk's Papers (CP) at 144-45.  The State argued that while Mr. Edwards was in custody when interviewed, Detective Coon had not engaged in interrogation because he not had asked "guilt seeking questions; he was there at the sole request of the defendant."  CP at 146.  It argued that Mr. Edwards's right to counsel had not been violated because the conversation concerned matters unrelated to Mr. Edwards's pending charges.

Detective Coon testified during the hearing that his conversation with Mr. Edwards was limited to Mr. Edwards's offer to develop drug assault information.  To the extent the interview touched on Mr. Edwards's then-current charge, Detective Coon testified:

> Q      Now, at this time when you're talking with him did you ask him any questions about the case that he was in custody on?
>
> A      I just wanted to know what his charge was to determine whether or not it was a workable charge or not.
>
> Q      Okay.  So, I guess outside of finding out what he was held on, you didn't talk to him specifically about the instances that arose to that charge, right?
>
> A      No, I did not.

4

Q    Okay. Now, he had given you some information about drug related sexual assaults and you asked him if he had direct knowledge of these assaults. Is that accurate?

A    Yes.

Q    What was his response to that?

A    His response to me was *all he does is sell drugs, he's not into rape*.

RP at 45 (emphasis added).

On cross-examination, Detective Coon clarified that he had not questioned Mr. Edwards during their meeting in December; he was "just listening to what Josh had to offer." RP at 49. He made clear that he was not involved in Mr. Edwards's case and explained "[a]nybody can request to speak with detectives whenever they want." RP at 47.

After requesting and reviewing additional briefing, the trial court ruled that Mr. Edwards's statement to Detective Coon was admissible at trial.

At Mr. Edwards's trial, Deputy Jennifer Stearns, who had arrested and searched Mr. Edwards, testified to discovering 24 grams of heroin in one of his front pockets.[3] She testified to having investigated at least 100 drug cases in her career and that based on her training and experience, 24 grams exceeded the normal amount encountered in

---

[3] Law enforcement witnesses testified that the quantity of heroin found on Mr. Edwards was 24 grams. But Jayne Aunan, the supervising forensic scientist for the Washington State Patrol Crime Laboratory testified that the weight of the heroin was 23 grams.

possession cases. She agreed it was "most common" to find 1 to 10 grams on a person during an arrest. RP at 184.

When cross-examined about the evidence of the heroin that had been admitted as evidence, Deputy Stearns testified that when found in Mr. Edwards's pocket, the heroin was "in a ball," but that it was "now divided up into pieces," and "[n]ot wrapped individually." RP at 180. Deputy Stearns also testified on cross-examination that it was possible for a person to individually consume 24 grams of heroin over a period of a week to 10 days. She admitted on cross-examination that during the search of Mr. Edwards's trailer, no cash was discovered nor were scales of the sort that could weigh small amounts, such as controlled substances.

Detective Coon was also questioned about "normal" quantities of heroin found on someone charged with possession, and testified that 2 or 3 grams was typical. He testified that 23 to 24 grams of heroin was not an amount commonly possessed for personal use, nor was it an amount commonly bought for personal use. He testified that a tenth of a gram, or "point," was a single dose amount, although a single dose could be a little bit more depending on user tolerance. RP at 197-98.

When cross-examined, Detective Coon agreed with defense counsel that a "point" of heroin would be no larger than a head on a small nail, and it was fair to say it was the "bare minimum amount" of heroin that you would see anyone buy. RP at 205. The detective also agreed that people who are heroin addicts "seem to use more on a day to

6

day hand to mouth basis than [sic] having a supply which they can access to readily."

RP at 206.

The jury found Mr. Edwards guilty of possession with intent to deliver.  Mr.

Edwards appeals.

## ANALYSIS

Mr. Edwards makes four assignments of error, but the two dealing with evidence

sufficiency prove dispositive, so we need not reach the others.  For reasons set forth

below, we conclude that the State failed to establish corpus delicti corroborating his

incriminating statement and without that statement, the evidence is insufficient to sustain

his conviction.

I.     THE STATE FAILED TO PRESENT INDEPENDENT EVIDENCE SUFFICIENT TO
       CORROBORATE MR. EDWARDS'S INCRIMINATING STATEMENT

Individuals sometimes confess to imaginary crimes.  *State v. Cardenas-Flores*,

189 Wn.2d 243, 261, 401 P.3d 19 (2017).  Corpus delicti is a "corroboration rule that

'prevent[s] defendants from being unjustly convicted based on confessions alone.'"  *Id.*

at 252 (alteration in original) (quoting *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278

(2010)).  The corpus delicti, meaning the "body of the crime," "must be proved by

evidence sufficient to support the inference that a crime took place, and the defendant's

confession alone is not sufficient to establish that a crime took place."  *Id.* (internal

quotation marks omitted) (quoting *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59

7

(2006). "Specifically, '[t]he State must present other independent evidence . . . that the crime a defendant *described in the* [*confession*] actually occurred.'" *Id.* (alterations in original) (quoting *Brockob*, 159 Wn.2d at 328). Because corpus delicti pertains to sufficiency of the evidence, it is an issue that can be raised for the first time on appeal. *Id.* at 263.

The independent evidence of corpus delicti "need not be sufficient to support a conviction, but it must provide prima facie corroboration *of the crime described in a defendant's incriminating statement.*" *Brockob*, 159 Wn.2d at 328. "Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a logical and reasonable inference of the facts sought to be proved." *Id.* (citing *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996) (internal quotation marks omitted)).

Where the incriminating statement is of an intent to deliver a controlled substance, Washington cases identify three requirements for establishing corpus delicti:

> (1) 'the evidence must independently *corroborate*, or confirm, a defendant's incriminating statement,' (2) the independent evidence 'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence,' and (3) the evidence must corroborate 'not just *a crime* but *the specific crime* with which the defendant has been charged.' *Brockob*, 159 Wn.2d at 328-29 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660).

*State v. Sprague*, 16 Wn. App. 2d 213, 226, 480 P.3d 471 (2021). The requirement that the evidence be inconsistent with a hypothesis of innocence is unique to the corpus delicti

analysis, and in tension with the principle that we draw all reasonable inferences in favor of the State. *Id.* at 229-30. In some cases, *Sprague* being an example, it will result in the independent evidence being insufficient to corroborate a defendant's incriminating statement (because consistent with a hypothesis of innocence) and yet sufficient to support a finding of guilt when viewed in the light most favorable to the State.

In this case, the State presented independent evidence that Mr. Edwards possessed 23 grams of heroin. "Mere possession, without more, does not raise an inference of the intent to deliver," however. *State v. Cobelli*, 56 Wn. App. 921, 925, 788 P.2d 1081 (1989). Even possession of a quantity greater than needed for personal use "is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). A law enforcement officer's opinion on what quantity of a controlled substance is "normal for personal use" likewise cannot alone support an inference of intent to deliver. *State v. Hutchins*, 73 Wn. App. 211, 217, 868 P.2d 196 (1994).

The State argues on appeal that evidence of the manner in which Mr. Edwards possessed the heroin—cut up and individually wrapped—independently corroborates a theory of intent to deliver. This argument is not supported by the record, however. Deputy Stearns clarified that the heroin was found in ball form, although it was "*now*

divided up into pieces," and "[n]ot individually wrapped." RP at 180 (emphasis added).[4]

No other evidence associated with drug selling activity (scales, a large amount of cash or cash in small denominations, packaging material, a transaction ledger) was found in the search of Mr. Edwards's trailer. Deputy Stearns testified that 24 grams of heroin could be consumed by a single individual over a week to 10 days, and Detective Coon agreed that an addict, with tolerance and access to a supply, could use more than what he characterized as normal or typical.

There was insufficient independent evidence of corpus delicti to support the admissibility of Mr. Edwards's statement about selling drugs.

II.     WITHOUT EVIDENCE OF MR. EDWARDS'S STATEMENT, THERE WAS INSUFFICIENT EVIDENCE THAT HE POSSESSED THE HEROIN WITH INTENT TO DELIVER

To convict Mr. Edwards of possession of heroin with intent to deliver, the State was required to prove beyond a reasonable doubt that Mr. Edwards possessed the heroin for delivery. RCW 69.50.401(1), (2)(a); *see In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

We review sufficiency of the evidence by asking whether "any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements

---

[4] The State's brief also repeatedly refers to 24 grams as amounting to "2,400 doses" (*see* Resp't's Br. at 6, 9, 19, 20) based on Detective Coon's miscalculation of the number of doses as that number during trial. Given the detective's testimony that a "point," or dose, was a tenth of a gram, however, the prosecutor correctly calculated the number of doses at 240. *See* RP at 213.

of the charged crime beyond a reasonable doubt." *Cardenas-Flores*, 189 Wn.2d at 265;

*see also State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). A claim of

insufficiency necessarily admits the truth of the State's evidence and all inferences that

can be reasonably drawn therefrom. *State v. Craven*, 67 Wn. App. 921, 928, 841 P.2d

774 (1992). We defer to the trier of fact on issues of "conflicting testimony, credibility

of witnesses, and the persuasiveness of the evidence." *State v. Thoma*s, 150 Wn.2d 821,

874-75, 83 P.3d 970 (2004), *aff'd*, 166 Wn.2d 380, 208 P.3d 1107 (2009).

Generally, evidence of intent to deliver is circumstantial. *State v. Davis*, 79 Wn.

App. 591, 594, 904 P.2d 306 (1995). Circumstantial evidence is not to be considered any

less reliable than direct evidence. *Sprague*, 16 Wn. App. 2d at 233. However, any

inferences founded on circumstantial evidence must be reasonable and cannot be drawn

from speculation. *Id.* (citing *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)).

Evidence of a defendant's intent to deliver must be "sufficiently compelling" such

that the intent is "'plainly indicated as a matter of logical probability.'" *Id.* (internal

quotation marks omitted) (quoting *Davis*, 79 Wn. App. at 594). Convictions for

possession with intent to deliver are highly fact specific and require substantial

corroborating evidence in addition to the mere fact of possessing a large quantity of a

controlled substance. *State v. Brown*, 68 Wn. App. 480, 485, 843 P.2d 1098 (1993)

(possession of an atypical quantity of cocaine was insufficient evidence of intent to

deliver where defendant had no weapon, no substantial sum of money, no scales,

11

packaging, or paraphernalia indicative of sales or delivery, and engaged in no actions suggesting that he was dealing). The evidence in this case was only of possession of more heroin than was typical for personal use. It was insufficient.

We reverse and remand for dismissal of the charge with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.